THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BUTLER *et al.*

No. 15,722.   (94 Pac. 1004.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of an Act.* The title of chapter 141 of the Laws of 1907, concerning the erection of county buildings, is sufficient.

2. ——— *Delegation of Powers — Uniform Operation of Laws.* Section 1 of such act is not unconstitutional, either on the ground that it delegates legislative power to the petitioners or on the ground that it does not have a uniform operation throughout the state.

3. ——— *Diversion of a Tax.* The provision in section 1 thereof providing for the appropriation of surplus funds belonging to the county for the purpose of erecting permanent county buildings is not in violation of section 4 of article 11 of the state constitution. (Gen. Stat. 1901, § 205.)

Error from Butler district court; GRANVILLE P. AIKMAN, judge.   Opinion filed March 7, 1908.   Affirmed.

*Fred S. Jackson,* attorney-general, *N. A. Yeager, Houston & Brooks,* and *H. C. Sluss,* for The State.

*C. A. Leland, A. L. L. Hamilton, H. W. Schumacher, R. B. Ralston,* and *T. A. Kramer,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: The purpose of this suit is to enjoin the levy and collection of certain taxes and the appropriation of funds for the erection of a court-house and jail in the city of El Dorado by the board of commissioners of Butler county. There was a trial on an agreed statement of facts. The court found the issues in favor of defendants and refused the injunction. The plaintiff brings the case here on error.

The controversy involves the validity of chapter 141 of the Laws of 1907. Prior to its enactment no board of county commissioners could proceed to erect any permanent county buildings or levy a tax for that purpose without first submitting the question to a vote of the electors of the county at some regular or special election. (Gen. Stat. 1901, § 1624.) The legislature of 1907 amended the general law on this subject, and provided that in counties of a certain class the board of county commissioners might erect permanent county buildings upon the petition of one-fourth of the resident taxpayers of the county without submitting the question to a vote.

On the 17th of May, 1907, the board of county commissioners of Butler county made an order in which it determined that it was necessary that a court-house. and jail should be erected at El Dorado, the county-seat, the cost not to exceed $60,000. The order recited that the assessed valuation of the property in the county was in excess of $6,000,000; that the county had at that time in its treasury $35,000 over and above its indebtedness of every kind or nature, being surplus funds; and that a petition praying for such order had been duly presented to the board, signed by more than one-fourth of the *bona fide* resident taxpayers of the county. The order and proceedings were in all respects in conformity with the provisions of the act.

The title of the act in question and the first section

thereof, which are the only portions involved herein, read as follow:

"An act to amend sections 1624, 1625 and 1626 ·of the General Statutes of 1901, pertaining to the erection of county buildings, and repealing said original sections.

"SECTION 1. That section 1624 of the General Statutes of 1901 is hereby amended so as to read as follows: Sec. 1624. The board of county commissioners of any county may determine, in their discretion, when the erection of any permanent building or buildings for the use of the county is necessary, and they shall also determine the cost of the erection thereof, and the same shall be entered on the journal, but no tax shall be levied, bonds issued or other obligations incurred on account of the erection of such building or buildings until after the question has been submitted to the electors of said county at some general election or at a special election held for that purpose. When, however, the assessed valuation of the property in any county shall be in excess of six million dollars, and said county shall have in its treasury a sum not less than twenty-five thousand dollars belonging to said county, over and above its indebtedness of every kind and nature, and shall have no bonded indebtedness, and the county commissioners are petitioned therefor by one-fourth of the *bona fide* resident taxpayers of said county, they shall, without submitting the question to the electors of such county, levy an annual tax for the purpose of building or repairing any county building at the county-seat of any county, said tax not to exceed two mills on the dollar upon the taxable property subject to taxation in said county in any one year, and said tax shall not be levied for a longer period than five years, and the county commissioners are further authorized and empowered to use any surplus funds that may be in the treasury belonging to said county in payment for the erection or repairing of said buildings." (Laws 1907, ch. 141,)

Four objections are urged against the validity of the act: (1) It is said that the act delegates legislative power to one-fourth of the voters of the county. (2) That the act does not have a uniform operation

34—77 KAN.

throughout the state, because it applies to only two counties in the state and is therefore class legislation. (3) That the title is insufficient. (4) That the act provides for the appropriation of money raised by taxation for current expenses to pay for the erection of county buildings. We shall consider these in their order.

(1) Does the act delegate legislative authority to the petitioning taxpayers? The act as passed by the legislature is a complete statute in itself and has been the law since it was enacted. It is a general law, and some of its provisions apply to every county in the state. Others of its provisions apply only to those counties falling within the class in which it is conceded Butler county belongs. The statute therefore declared what the law is in reference to the erection of county buildings in Butler county before any petition was presented by the taxpayers. The petition was not necessary to make the law. It was only necessary to give the board authority to act under the law. A statute is no less a law because its taking effect is made to depend upon some subsequent event. (Cooley's Con. Lim., 7th ed., 164.) In this respect the law is analogous to a great variety of laws the validity of which has been upheld. (See *Noffzigger v. McAllister*, 12 Kan. 315, upholding the night herd law, *Phœnix Ins. Co. v. Welch, Supt.*, 29 Kan. 672, upholding certain provisions of the insurance law, and *The State, ex rel., v. Hunter,* 38 Kan. 578, 17 Pac. 177, in which the law providing for the appointment of metropolitan police upon a petition of two hundred householders was declared valid.) The precise question presented here was thoroughly discussed in the last-named case by Mr. Justice Johnston, and requires no additional comment.

The argument that because the act confers upon twenty-five per cent. of the resident taxpayers the power to set the law in operation it therefore confers legislative powers is not sound. The provision that the board of county commissioners may act upon a majority vote of the electors would be equally a dele-

gation of power and open to the same objection, yet that is one of the general provisions of the act and has been a part of the law since 1868.

It is contended, however, that the act falls within the rule declared in *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, and in *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384, for the reason that it is claimed there is no room in the act for the exercise of any discretionary power by the board. It is said that the act of the petitioning taxpayers, and theirs alone, irrevocably determines the action taken by the board. It is therefore contended that the portion of the act under which the commissioners proceeded is unconstitutional, in that it attempts to confer legislative powers upon the petitioning taxpayers, first, to determine absolutely that permanent county buildings shall be erected, and, second, to charge upon real estate and personal property of the county a special tax to pay for the same. This contention rests for its support upon what we regard as a strained construction of section 1, *supra.* It is first declared that the board may in its discretion determine when the erection of any permanent buildings for the use of the county is necessary, and shall also determine the cost thereof, and that the same shall be entered on the journal. Counsel insist that these provisions only apply in case the question is submitted to a vote of the electors of the county, and have no application where the action of the board is initiated by a petition instead of a vote. The whole section must be construed together. If we keep in mind the obligation which courts are under so to construe an act of the legislature as to uphold its validity, if it be possible to do so, a rule which has been repeatedly declared and adhered to by this court, we have no difficulty in construing the section to mean that the provisions in the first part of the section apply to the whole section. The latter part of the section is a proviso to the effect that when the conditions are such that a

county falls within the excepted class the question need not be submitted to a vote.

Had the legislature intended the construction which plaintiff insists upon the act would doubtless have provided in plain terms that where the commissioners are petitioned by one-fourth of the resident taxpayers they shall, without submitting the question to the electors, and without determining the necessity for or the cost of the buildings, proceed, etc. We think the construction contended for is unreasonable, and that the law contemplates that where a petition is presented, signed by one-fourth of the resident taxpayers, the duties and powers of the board are the same as though the question had been submitted to a vote of the electors and carried. The board must determine the necessity and cost of the buildings in either case. Any other view of the act drives us to the absurd conclusion that the legislature intended that where the question should be submitted to a vote the commissioners should first determine the cost, but under proceedings upon petition there should be no determination of the cost, for, if the construction contended for is correct, there is no provision for determining so essential a matter as the cost when the buildings are to be erected upon petition. The petitioning taxpayers themselves are powerless. After their petition is presented the question whether permanent buildings shall be erected rests wholly with the board. This, we think, is the reasonable construction to be placed upon the law.

The act, therefore, is not open to the objection urged, and the cases of *Comm'rs of Wyandotte Co. v. Abbott*, 52 Kan. 148, 34 Pac. 416, and *Hutchinson v. Leimbach*, 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384, relied upon by plaintiff, are not in point. In the Abbott case it was expressly held that the statute deprived the board of any discretion and made the action of the petitioners mandatory. In the Leimbach case the precise question determined was that it is not competent for the legislature to authorize an individ-

ual to effect a change in the boundary of a city. The doctrine of the Abbott case was held to apply to the facts and to control the decision. The following excerpts from the opinion in the Abbott case are sufficient to show that the principles upon which it was decided have no application to the present case:

"The petitioners named in the statute are authorized, absolutely and arbitrarily, to determine whether the improvement is necessary and shall be made. . . . If the legislature had conferred upon the board of county commissioners of Wyandotte county discretion to order the improvement, the control thereof, and the amount of expenditure therefor, the statute might be valid." (Pages 158, 161.)

(To the same effect see *Railway Co. v. Cambern,* 66 Kan. 365, 71 Pac. 809.)

In the present case the act declares that the commissioners may determine in their discretion when the erection of buildings is necessary, and shall also determine the cost. From the statement of facts it appears that the commissioners adopted this course and actually determined the necessity and the cost.

(2) Is the act in conflict with the first provision of section 17 of article 2 of the constitution? (Gen. Stat. 1901, § 135.) The language of the provision reads: "All laws of a general nature shall have a uniform operation throughout the state." It is urged that the act in question is a general law which can apply to not more than two counties in the state. If, however, it operate uniformly on all the members of the class to which it applies it is not open to the objection, provided the classification adopted by the legislature is not an arbitrary or capricious one. The legislature has the power to enact laws of a general nature which will be applicable only to a certain portion of the state or to a certain class of citizens. The following language is from the syllabus in the case of *Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915: "An act, to have a uniform operation throughout the state, need not affect every

individual, every class, or every community alike."
The fact that there are at present but few counties to
which the exceptions can apply does not of itself ren-
der the act repugnant to this provision of the constitu-
tion. In *The State v. Downs,* 60 Kan. 788, 57 Pac.
962, it was said:

"An act general in its provisions, but which can
presently apply to only one city on account of there
being but one of requisite population or other quali-
fication, but which was designed to, and can in all
substantial particulars apply to other cities as they be-
come possessed of the requisite population or other
qualification, cannot be regarded as a special act."
(Page 793.)

(To the same effect are *Noffzigger v. McAllister,* 12
Kan. 315; *Tarman v. Atchison,* 69 Kan. 483, 77 Pac.
111; *Parker-Washington Co. v. Kansas City,* 73 Kan.
722, 85 Pac. 781, and cases cited.)

It can hardly be said that to base a distinction and
classification upon the financial condition of a munici-
pality is not as reasonable as to base them upon mere
population, especially where, as in the case of the law
under consideration, the financial condition of a county
bears such close and peculiar relation to the legislative
purpose, and furnishes an appropriate reason for the
classification. The act provides for the erection of
county buildings. It is general in its nature, and ap-
plies to every county in the state, but excepts from
the general provisions certain counties in which there
is property assessed at great value, which have no
bonded indebtedness, and which have a large surplus
in their treasury over and above all indebtedness, and
grants to such counties thus distinguished and classi-
fied a simpler method for procuring public buildings.
Before we are authorized to hold the act repugnant to
this provision of the constitution for the particular
reason we are now considering we must conclude that
the classification is capricious and unreasonable. This
we are unable to do.

(3) The objections to the title of the act are extremely technical. The title of the original act is, "An act relating to counties and county officers." (Gen. Stat. 1901, ch. 25.) The amended sections relate to the same subjects which are treated in the original act, and the amended act therefore comes within the scope of the original act.

"It is therefore as though it were a part of the original act, with the title to that enlarged by the latter portion of the title to the amending act." (*Philpin v. McCarty, Supt., &c.*, 24 Kan. 393, 405.)

(4) Finally, it is contended that the act is in conflict with section 4 of article 11 of the constitution (Gen. Stat. 1901, § 205), which reads as follows:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

The case of *Smith v. Haney*, 73 Kan. 506, 85 Pac. 550, is relied upon. The statute construed in that case reads as follows:

"The said board of county commissioners are hereby authorized to use and expend in the erection, equipment and furnishing of said court-house and county-office building, in the year or years in which a tax may be levied, as they may deem necessary, in addition to the amount or amounts raised by the levy of the tax as herein provided for, such sum or sums from the general fund of said county not otherwise appropriated after all other running expenses of said county shall have been provided for." (Laws 1905, ch. 167, § 3.)

This part of the act was held to be repugnant to the foregoing provision of the constitution because it authorized the commissioners to use a part of the general fund for the building of a court-house. It will be observed that the statute in express terms provides that funds raised for one purpose shall be applied to another. It, therefore, in terms violated the constitutional provision. In the present case the language is:

"And the county commissioners are further author-

ized and empowered to use any surplus funds that may be in the treasury belonging to said county in payment for the erection or repairing of said buildings." (Laws 1907, ch. 141, § 1.)

The object of the provision of the constitution is to prevent the levy of a tax for one purpose and the use of the funds raised thereby for another purpose. To levy a tax to build a bridge and divert the funds so raised to the erection of county buildings, or to levy a tax for general purposes and use the funds for the erection of a court-house or to improve a road, is exactly what the constitution prohibits. But there is such a thing as surplus funds which arise by reason of the fact that all the money raised for a special purpose is not always required for the accomplishment of the purpose. It is impossible to raise by taxation an exact amount. If, for instance, a bridge is to cost $5000, and a tax levy is made at a certain rate, it is impossible for any one to estimate in advance the exact amount that will be collected under the levy. There is, therefore, usually a surplus, which Bouvier defines to be "that which is left from a fund which has been appropriated for a particular purpose; the remainder of a thing; the overplus; the residue." (2 Bouv. Law Dict. p. 1086.) Manifestly, it is the duty of the authorities in levying a tax to exercise good faith and not purposely levy a tax which would create an unnecessary surplus. In the Haney case (73 Kan. 506) the statute was worded so as leave it within the power of the commissioners to levy a greater tax for various purposes than the purposes required, with the intention thereby of creating a fund to be used in the erection and repair of county buildings. No such objection can be raised to the act in question. The legislature has recognized the fact that a surplus will necessarily arise in any fund, and has provided that the county treasurer shall transfer the same to the general fund of the county. (Gen. Stat. 1901, § 1713.) This the legislature has done from the necessity which arises by reason of the un-

expended surplus in various funds, and it is a reasonable argument to say that if the legislature has the power to provide for the disposition of such surplus funds in one way it may do the same thing in another without violating the constitution. And this is what the legislature has done by this act. Taking one view of the facts, it would seem that none of the $25,000 surplus appropriated by the board for the erection of county buildings was ever derived from taxes. It appears that within recent years the county has received and has on hands a surplus from interest on moneys deposited in banks, from fees collected by county officers in excess of their salaries, and from other miscellaneous sources much more than the amount appropriated. We think, therefore, that the provision of the act authorizing the appropriation by the county of surplus funds is not in violation of the constitutional provision.

We conclude that the act is not unconstitutional upon any of the grounds urged. The judgment is affirmed.

JOHNSTON, C. J., MASON, SMITH, GRAVES, BENSON, JJ., concurring.

BURCH, J. (dissenting): I think the classification adopted in the amendment to the old law is purely arbitrary and capricious and has no necessary or proper relation to the purpose sought to be accomplished, viz., to get rid of a vote of the people upon the question of whether their money shall be expended in building a court-house.

It ought to be taken as elementary that legislative classification should be based upon substantial distinctions which make one class really different from another, and that any classification adopted must be germane to the purpose of the law. (Binney, Special Legislation, 59 et seq.) The legislature attempted to make the condition of county finances the characterizing feature of this law—taxable property of a certain

value, no bonded indebtedness, and a surplus of a stated amount. The combination of these elements is purely factitious, but they make up an accidental kind of financial condition. Now, financial condition has no signification whatever unless it serves to distinguish ability to erect and pay for a court-house without substantial burden to the taxpayers from the lack of such ability. Unless it marks counties well able to build a court-house and separates them from counties not well able to do so it is arbitrary, capricious and meaningless as a basis of legal classification.

The act divides counties into two classes: First, all those possessing (a) taxable property above $6,000,-000; (b) no bonded indebtedness; (c) a surplus of $25,000 or more. Second, all other counties.

But the second class embraces counties better able to build court-houses without burden upon the taxpayers than those in the first class, as well as counties less able to do so. If a county have $10,000,000 of taxable property and $50,000 surplus in the treasury, but a bonded indebtedness of $1000 or $5000, it falls in class two. If another county have $10,000,000 of taxable property and no bonded indebtedness, but only $23,000 surplus, it falls in class two. Both these counties are better entitled to a "simpler method" of obtaining a court-house than counties in class one, if financial condition counts for anything at all, yet they are placed in the same class with counties which have a scant million dollars worth of taxable property, no surplus, and which are bonded to the limit. Therefore the pretended basis of classification does not classify. It is nothing but a subterfuge, and to dignify it as the controlling feature of a law makes the constitution a farce.

That financial condition may be a proper element to be considered in making a classification of counties cannot be doubted. But what kinds of classification are naturally suggested by the mark of financial con-

The State v. Butler County.

dition? What is the nature of the consequences which should follow differences in financial condition? Manifestly financial consequences—limitations or the absence of limitations upon total indebtedness, bonded indebtedness, the amount of gross tax levies, the right to issue bonds, and the like; that is, things which have a natural relation to, and causal connection with, financial differences.

The question whether the people shall be disfranchised has no relation to, and is utterly incongruous with, the purely adventitious combination of $6,000,000 of taxable property, no bonded debt, and a surplus of $25,000. The two things are not germane to each other. The people vote upon whether a court-house shall be built in counties in better financial condition and in counties in worse financial condition. What magic is there about the artificially contrived intermediate condition which suggests that the right of suffrage ought to be stricken down? What necessity, propriety or reason exists for allowing a small minority of the taxpayers and a complaisant board of county commissioners to override the will of a majority of the people in a county having $6,000,000 of taxable property, no bonded indebtedness and a surplus of $25,000 when they cannot do so in a county with $10,000,000 of taxable property and no bonded indebtedness, but a surplus of only $24,500; when they cannot do so in a county with $10,000,000 of taxable property and a surplus of $50,000, but a bonded debt of $5000; and when they cannot do so in a county with $5,000,000 of taxable property, but which has a small bonded debt and no surplus?

A fair answer to these questions ought to be forthcoming before this act is upheld. None is vouchsafed in the brief or oral argument for the defendants, and none appears in the opinion of the court. I know of none. To my mind the act is a common example of a vicious type of legislation which scandalizes constitu-

tional government in this and in other states. Believing that it violates two fundamental requirements which ought to be scrupulously observed, I think it is unconstitutional and void.