No. 27,567.

The State of Kansas, ex rel. W. A. Smith, Attorney-general, *Plaintiff,* v. The Board of County Commissioners of The County of Thomas et al., *Defendants.*

### SYLLABUS BY THE COURT.

1. Bounties—*For Destruction of Jack Rabbits—Mandamus Will Not Lie to Compel County Commissioners to Issue Warrants.* Mandamus will not issue to compel a board of county commissioners to issue county warrants against the county general fund to pay a bounty on jack rabbits, when the claims for such bounty aggregate such an extraordinary sum that they cannot be paid out of that fund as an incidental expense of conducting the governmental business of the county, and when the general fund is exhausted.

2. Same—*For Destruction of Jack Rabbits—Necessity for Special Tax Provision.* Conceding but not deciding that the jack-rabbit bounty authorized by R. S. 19-2307 may be paid out of the county general fund so long as the aggregate amount for such bounty is a relatively minor and incidental charge upon that fund and can readily be met from its surplus over and above the primary and essential current expenses of the county properly chargeable thereto, nevertheless when the claims for such bounty become so onerous that they cannot be met from the general fund without impairing that fund or diverting it from the regular purposes for which it is levied and collected, the payment of jack-rabbit bounty cannot be compelled by mandamus until a tax therefor is authorized by law and· levied for that purpose in conformity with section 4 of article 11 of the state constitution.

Original proceeding in mandamus. Opinion filed February 12, 1927. Writ denied.

*William A. Smith,* attorney-general, and *B. W. Brooks,* county attorney, of Logan county, for the plaintiff.

*Guido E. Smith,* county attorney of Thomas county, for the defendants.

----

Mandamus, 38 C. J. p. 551 n. 16.

State, *ex rel.,* v. Thomas County Comm'rs.

The opinion of the court was delivered by

Dawson, J.:   The state invokes the original jurisdiction of this court by a motion for an alternative writ of mandamus directing the board of county commissioners of Thomas county to pay a bounty of five cents on each jack rabbit killed in that county.

The defendant board endeavors to meet the issue by an answer in which it admits that since January 30, 1926, it has not paid such bounty, pursuant to a resolution of the board to that effect.   The reasons for this attitude of the board are that the general fund of the county is overdrawn, and that it is unlawful for the defendant board to draw a warrant on the county treasurer when there are no funds on hand or in sight to pay it. Another reason is that the jack-rabbit bounty is not properly chargeable to the general fund; that in Thomas county such bounty claims have recently grown to be an extraordinary expense, and that the legislature has not authorized a levy to meet it as required by section 4 of article 11 of the state constitution which provides:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

The state and the defendant board have submitted this cause upon an agreed statement of facts, the most significant of which is that the general fund of the county is overdrawn and that the maximum levy for the general revenue purposes in Thomas county for the year 1927 will raise no more than $29,000.   It was also stated in the oral argument, without dispute, that the current expenses of primary importance in conducting the government of the county, viz.:   the administration of justice, salaries of county officials, county printing, heat, fuel, light, stationery, postage, and the like, aggregate $25,000 to $26,000 per annum.   It was also shown how the jack-rabbit bounty expense has grown since the enactment of R. S. 19-2307 (Laws 1923, ch. 109) thus:

*Jack-Rabbit Bounty, Paid by Thomas County.*
"For the year 1924.................................. $3,304.95
For the year 1925..................................  6,134.40
For January, 1926..................................   963.60"

For whatever informative value it may have, the parties also show the court the rapidly developing financial drain which the statute (R. S. 19-2307) has cast upon other nearby counties similarly concerned:

State, *ex rel.,* v. Thomas County Comm'rs.

### Sherman County.

"For the year 1924.................................. $3,690.85
For the year 1925.................................. 8,208.80
January 1, to 16, 1926............................. 691.15"

### Logan County.

"For the year 1924.................................. $1,191.00
.For the year 1925.................................. 2,077.00
For the year 1926.................................. 6,700.00"

### Rooks County.

"For the year 1924.................................. ........
For the year 1925.................................. $4,116.90
.January and February, 1926....................... 1,286.05"

### Sheridan County.

"For the year 1924.................................. $2,540.75
For the year 1925 (11 months)..................... 5,362.65
The year 1925 the bounty was paid until approximately November."

The statute which has precipitated this situation was enacted in 1923, but before quoting from its provisions it may be instructive to trace this jack-rabbit bounty legislation briefly:

In 1877 it was enacted that the county commissioners *shall* issue county warrants for the extermination of wild animals, viz.: one dollar for each wolf, coyote, wildcat or fox, "and five cents for each rabbit" killed in the county. (Laws 1877, ch. 76.)

In 1885, the bounty was changed to three dollars for the wolf, coyote, wildcat or fox, and continued at five cents for the rabbits; but the payment of all such bounties was made optional with the board of county commissioners. (Laws 1885, ch. 73.)

In 1889, the bounty statute was rewritten. It provided, among other bounties, that the county commissioners *may* pay five cents for each rabbit killed in the county; but it also provided that this act should not apply to counties having a total property valuation of less than $500,000. The express grant of discretionary power vested in the county boards by the statute of 1885 was incorporated without reference, and chapter 73 of the Laws of 1873 [irrelevant] was repealed. (Laws 1889, ch. 90.)

In 1899, a statute was enacted that the county commissioners *shall* pay bounties on coyotes and wolves, but did not specifically repeal other statutes except in general terms. (Laws 1899, ch. 59.)

In 1905, the statute of 1899 was amended to read that the county board *may* pay bounties on coyotes and wolves. (ch. 73.)

State, *ex rel.,* v. Thomas County Comm'rs.

In 1907, a statute which did not refer specifically to any prior enactment provided that the county commissioners *shall* pay bounties on coyotes and wolves, "and gophers, ten cents each." (Laws 1907, ch. 67.)

In 1908, it was enacted that boards of county commissioners *may* pay ten cents for each pocket gopher scalp, and each ground mole scalp, of such animals killed in the county. (Laws 1908, ch. 60.)

In 1909, it was enacted:

"Section 1. That the county commissioners in each county in the state of Kansas *shall,* at the April, 1909, meeting of said board, place and thereafter pay a bounty of five cents on each pocket gopher, crow, or crow's head, and a bounty of one cent on each crow's egg, if said pocket gopher, crow or crow's egg be caught, killed or taken in said county.

"Sec. 4. All acts or parts of acts in conflict with the provisions of this act are hereby repealed: *Provided,* That this act shall not be so construed as to prevent any county from paying the voluntary bounty of ten cents per gopher as provided in chapter 60 of the Session Laws of 1908." (Laws 1909, ch. 150.)

In 1923, the present statute (R. S. 19-2307 *et seq.*) was enacted:

"Section 1. That the county commissioners in every county in the state of Kansas *shall* at the April, 1923, meeting of said board, place and thereafter pay a bounty of five cents on each jack rabbit and ten cents on each pocket gopher, crow or crow's head, and a bounty of one cent on each crow's egg, if said pocket gopher, jack rabbit, crow or crow's egg be caught, killed or taken in said county.

"Sec. 4. That sections 2868, 2869, 2870, and 2871 of the General Statutes of Kansas for 1915, and all other acts and parts of acts in conflict with the provisions of this act, are repealed: *Provided,* That this act shall not be so construed as to prevent any county from paying *the voluntary bounty of ten cents per jack rabbit as provided in chapter 60 of the Session Laws of 1908."* (Laws 1923, ch. 109.)

The sections of the General Statutes repealed by section 4 just quoted refer to the act of 1909 cited above. The proviso in section 4 touching the voluntary bounty of ten cents per jack rabbit is abortive because chapter 60 of the Session Laws of 1908 did not authorize such a bounty on jack rabbits but on pocket gophers and ground moles.

In this examination of the changing moods of the legislature during the past half century, no special tax to pay any of these bounties was authorized. We are bound to take judicial notice of the fact that at the times when the statute was mandatory and again when it was intermittently permissive the bounties were paid out of the general revenue funds of the several counties. And when

the expense was relatively small or negligible compared with the aggregate sum requisite to defray the current expenses of the county —when the expense was but a minor incident—there was no grave harm done, even if such bounties, in strict deference to section 4 of article 11 of the constitution, should not have been paid out of the general fund. The principal purposes of the county general fund are well understood. It is the fund out of which the ordinary current expenses of conducting the county government are met. (*Railway Co. v. City of Topeka,* 95 Kan. 747, 749, 149 Pac. 697, and citations.) Incidental expenses pertaining thereto are likewise properly paid out of this fund, subject of course to statutory mandates and inhibitions. Of necessity, some discretion touching what are incidental expenses is vested in the county commissioners, since they are the financial and business managers of the county.

In *Smith v. Haney,* 73 Kan. 506, 509, 85 Pac. 550, it was said:

"The phrase 'general fund,' as applied to the fiscal management of a Kansas county, has a definite and well-recognized meaning. It covers the proceeds of a tax levied to provide for the usual current expenses."

The rule just quoted has not been so rigorously applied as to forbid the use of a surplus in the general revenue fund of the county to defray certain unusual expenses which might properly have been met by a special tax if the general fund could not well afford it. (*State v. Butler County,* 77 Kan. 527, 94 Pac. 1004; *State, ex rel., v. Raub,* 106 Kan. 196, 203, 186 Pac. 989; *Trust Co. v. Grant County,* 111 Kan. 104, 205 Pac. 1031.)

And so here. So long as the expense of jack-rabbit bounties called for no more than a relatively small portion of the general fund, and could be readily met therefrom, there was nothing essentially irregular about such bounties being paid from that fund.

But an altogether different situation arises when the bounty on jack rabbits becomes one of the heaviest financial burdens of the county, when it can no longer be denominated a mere incident of the business of the county government, and where the general fund —the fund for defraying the ordinary current expenses of the county government—will not cover such an extraordinary burden. Probably the bounty paid by the defendant board in January, 1926, $963.60, would be above the average for the entire year, but it seems certain that it would run to $10,000 per annum, or more than one-third of the entire general revenue fund of the county.

Obviously the legislature did not anticipate that the jack-rabbit

bounty would create such a heavy demand upon the county, otherwise it would have authorized a special tax levy to meet it, as the constitution commands.   (Art. 11, sec. 4.)

*Vide* the interesting case that arose in construing a coyote-bounty statute in California, *Ingram v. Colgan*, 106 Cal. 113.

Following the destructive floods of 1903, which created extraordinary expenses which the general revenue funds of the counties affected could not meet, the special session of the legislature, called to deal with such problems, enacted Laws of 1903 (special session), ch. 43, authorizing the county board of any county to issue warrants to pay for burying the dead, rendering temporary aid to the distressed, preventing disease and pestilence and to clean up debris, but the same act also authorized the levy of a tax to pay such warrants.   (R. S. 19-236.)   So, too, the board of county commissioners of any county, on the initiative of electors, is authorized and directed to incur expense for the purchase and distribution of poison for grasshoppers, and to pay the cost of such service and materials out of the general fund, but this statute also provides for the replenishment of that fund by a special tax not exceeding one mill on each dollar of the assessed valuation of the county.   (R. S. 19-2404; Laws of 1925, ch. 136.)

Another feature of this case which must not be overlooked is that there is no money in the county treasury to meet this extraordinary expense, and no levy imposed which can be expected to meet it.   It is a very serious offense for a board of county commissioners to issue warrants in any one fiscal year in excess of the amount which the tax levied to meet such warrants will produce revenue enough to pay.   (R. S. 19-241, 19-242, 19-243; *Bank v. Reilly*, 97 Kan. 817, 156 Pac. 747.)   Moreover, the action here is mandamus. Notwithstanding the general-revenue fund of the county is exhausted and overdrawn, and the ordinary current expenses of the county absorb its entire general revenue so as to leave little or no surplus, and the jack-rabbit bounty is no longer a minor incidental expense but has become one of the heaviest financial burdens of the county and essentially requiring a special tax to meet it as provided under article 11, section 4 of the constitution, and the legislature has not authorized such special tax, the state insists that we issue a writ of mandamus to compel the defendant board to issue its warrants to meet this extraordinary expense.   In such a

State, *ex rel.*, v. Thomas County Comm'rs.

condition of affairs we do well to be reminded that mandamus is a discretionary writ.

In *State, ex rel., v. Comm'rs of Phillips County*, 26 Kan. 419, it was said:

"The writ of mandamus is not wholly a writ of right, but lies to a considerable extent within the sound discretion of the court where the application is made, and no court should allow a writ of mandamus to compel a technical compliance with the letter of the law where such compliance will violate the spirit of the law." (Syl. ¶ 2.)

In *Kolster v. Gas Co.*, 106 Kan. 84, 86, 186 Pac. 738, it was said:

"An action in mandamus is a very different thing from an action on a debt or for damages or the like, where judgment as prayed for goes as a matter of course to the prevailing party, and where the court is absolutely bound to give such judgment. Mandamus is a discretionary writ, and before granting it the court may and should look to the larger, public interest which may be concerned—an interest which the private litigants are apt to overlook when striving for their private ends."

The demands upon our time will not permit us to pursue this subject at greater length, but enough has been indicated to show that the writ of mandamus should not issue in the circumstances. Writ denied.