### No. 31,620

FRANK HAWKINS, *Plaintiff*, v. ALEX GREGORY et al., as the BOARD OF DIRECTORS OF THE KAW VALLEY DRAINAGE DISTRICT of Wyandotte County, and HOWARD THORN, as County Clerk, etc., *Defendants*.

### No. 31,682

THE STATE, ex rel. FREDERICK R. WHITE, as County Attorney, and THE BOARD OF DIRECTORS OF THE KAW VALLEY DRAINAGE DISTRICT of Wyandotte County, *Plaintiffs*, v. HOWARD THORN, as County Clerk, etc., *Defendant*.

(26 P. 2d 247.)

478

Opinion filed November 11, 1933.

In case No. 31,620, *A. J. Herrod,* of Kansas City, for the plaintiff.

In case No. 31,682, *Frederick R. White,* county attorney, *John E. Blake* and *A. J. Herrod,* all of Kansas City, for the plaintiffs.

*Fred Robertson, Edward M. Boddington, J. O. Emerson, George H. West* and *P. W. Croker,* all of Kansas City, for defendant Howard Thorn, in both cases.

The opinion of the court was delivered by

DAWSON, J.: These cases are original proceedings in which a peremptory writ of mandamus is sought to compel the county clerk of Wyandotte county to extend on the tax rolls a levy of 2.5 mills on the dollar on all property within the Kaw Valley Drainage District which was ordered by resolution of its board of directors on August 25, 1933.

The county clerk promptly notified the board that from his examination of its levy and budget his opinion was that the levy was unlawful and illegal and he would not extend it. Following that notification the board of directors conferred with the county clerk, but he steadfastly adhered to his first position, and the matter was allowed to drift until September 19, 1933, at which time the plaintiff Frank Hawkins, a private citizen and taxpayer who owned property within the drainage district, brought the first of these cases, No. 31,620, praying for a writ of mandamus directing the county clerk to spread this 2.5-mill levy on the tax roll.

At a hearing in the chambers of the Chief Justice on the application for an alternative writ, the court raised a question of plaintiff's right to maintain the action, and ordered that question briefed. While counsel were exploring the law on that subject, on October 28, 1933, the county attorney of Wyandotte county instituted a similar action in the name of the state to the end that an adjudication of the validity of this questioned tax levy should not fail for want of

a proper party plaintiff. However, unless he was dissatisfied with the substance of the pleading in the first case, No. 31,620, it would have simplified matters if he had intervened in that case in the name of the state, rather than clutter our dockets with another case. Such procedure would have been in accord with precedent and good practice. (*State, ex rel., v. Public Service Comm.*, 135 Kan. 491, 492, 11 P. 2d 999.)

By order of court, however, these cases have been consolidated, and owing to the urgency of an early determination an alternative writ in the second case was dispensed with. Counsel for the litigants appeared and argued the cause at length. The applications for the writ and the written objections to its granting developed no dispute of fact of present importance.

The allegations of both applications for the writ, much abridged, are that the Kaw Valley Drainage District was organized under authority of the statute of 1905 (R. S. 24-401 *et seq.*); that dikes have been constructed on each side of the Kaw for a number of miles upstream from its confluence with the Missouri river, at a cost of $1,750,000, for which the district still has a bonded indebtedness of $1,225,000; that these dikes are 30 feet in height above low-water level.

In July, 1915, the board of directors adopted a resolution to raise the dikes to an additional elevation of 5½ feet, and considerable work has been done on the left bank of the Kaw to carry that resolution into effect; but no work of that sort has been done on the right bank of the stream, leaving property on that side of the river open to inundation whenever a 30-foot rise occurs in the river. (It should be interpolated here that the electors of the district have never sanctioned the construction of dikes above the 30-foot level, and have disapproved a proposal to raise the dikes to a height of 35½ feet.)

It is also alleged that on August 25, 1933, in due form, the board of directors adopted a resolution imposing taxes for a general fund and for interest and sinking funds. That part of it of present concern reads:

"That pursuant to the authority conferred upon said district by chapter 215 of the Session Laws of the state of Kansas for 1905, and amendments thereto, The Kaw Valley Drainage District of Wyandotte county, Kansas, by and through its board of directors, does now and hereby levy a tax upon all taxable property within said district for the ensuing year, as follows:

"1. A tax of .0025 mills [2.5 mills intended] on the dollar to create a general fund."

Accompanying the state's application for the writ is a copy of the drainage district's "budget and financial statement" for the current year, duly certified by the officers of the district and reciting—

"That it is necessary to levy .0025 per dollar, [2.5 mills intended] to raise $107,500 for the general fund."

The financial statement also shows that the drainage district treasurer's balance, July 1, 1933, in the general fund is $58,611.64.

The budget for the ensuing year contains the following, among other items:

|  | Proposed | Adopted |
| --- | --- | --- |
| "7. Improvement projects | $110,000 | $75,000." |

Repeatedly in the state's application for the writ the allegation is made that the purpose of this 2.5-mill levy for the general fund is to provide money to raise the dike on the south bank of the Kaw 5½ feet. A typical excerpt from the application reads:

"11. That the present drainage board intended to use the funds received from the tax of 2.5 mills on the dollar to create a general fund for the purpose of repairing the dike or levee on the right bank of said river *to raise the height of said levee on the south side of said river.*"

The application also alleges that in order to collaborate with the federal government and with railroads owning adjacent lands "to raise the height and repair the levees," this money is needed, and that the federal government is ready to furnish $120,000 for these purposes upon condition that the drainage board provide $75,000 for the same purpose, and that the board is anxious to take advantage of this liberal offer of the United States government.

Most important of all the allegations and admissions of the state's application for the writ is the following:

"17. That the drainage board did not follow the requirements of R. S. 24-418 and 24-422, for the reason that said drainage board decided that the raising of the dike on the south bank of said river and the other work to be carried on with the funds to be raised from the levy of 2.5 mills did not constitute new construction work, but did decide that the same constituted repair work and decided that the same should be paid for by the levy of a tax, the proceeds of which were to constitute and be placed in the general fund."

To the alternative writ issued in case No. 31,620, defendant filed an answer, the substance of which is included in his objections to the issuance of a writ in case No. 31,682. We pass by matters of historical and financial interest concerning this drainage district's

affairs included in defendant's answer and objections, and note with particularity certain provisions of statute which seem to control this controversy. We may also ignore such secondary considerations as the impleading of the members of the board of directors of the drainage district in these proceedings.

In the first place it should be obvious that the plaintiff, a private citizen, cannot maintain the action instituted by him in case No. 31,620. He has no special interest apart from the general run of citizens and property owners of the drainage district which would justify his assumption of the functions of a public prosecutor to compel the county clerk to extend this tax levy. As this court has many times observed, this state is adequately provided with officers to attend to matters of this sort, and even neglect of or inattention to such duties by public officials does not warrant their assumption by private litigants except where the statutes so provide. In the early case of *Bobbett v. State,* 10 Kan. 9, where private litigants sought to compel a board of county commissioners to order an election for the relocation of a county seat, it was held that the action could not be maintained by private citizens. The syllabus reads:

"1. Mandamus will not lie at the instance of a private citizen to compel the performance of a purely public duty.

"2. Such a suit must be brought in the name of the state, and the county attorney and the attorney-general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties.

"3. Where a private citizen sues out a mandamus, he must show an interest specific and peculiar in himself, and not one that he shares with the community in general."

In *Gormley v. School Board,* 110 Kan. 600, 601, 204 Pac. 741, mandamus at the instance of private litigants was denied, the court saying:

"The extraordinary remedy of mandamus is given to compel the performance of public duties, and ordinarily where public rights are to be subserved the remedy can only be invoked by the county attorney or attorney-general, the officers intrusted with the discretion and authority to represent the public in the courts. [Citations.]"

In *Home Riverside Coal Mines Co. v. McAuliffe,* 126 Kan. 347, 348, 267 Pac. 996, it was said:

"Early in the history of this state it was determined that '. . . for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character . . .'" (*Craft v. Jackson Co.,* 5 Kan. 518, 521; and

see *Clark v. George,* 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus *(Bobbett v. State, ex rel. Dresher,* 10 Kan. 9; *Collingwood v. Schmidt,* 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports."

Passing next to the legal questions projected in the state's application for the writ, it will be noted that it frankly avows the purpose of the tax of 2.5 mills to be to provide money to raise the dike on the right bank of the river to a height of 35½ feet. This admission squarely raises the question whether the increase of 5½ feet in the height of the dike is repair work or new and additional construction work which the taxpayers themselves must authorize before it is undertaken. The statute authorizes the drainage board to levy an annual tax of not more than 5 mills on the dollar to create a general fund. (R. S. 24-407, subparagraph 11.) The statute also authorizes the board to levy assessments and special taxes to defray the costs of the construction of levees or other works or improvements to prevent inundation and kindred purposes. (R. S. 24-407, subparagraph 12.)

Subsequent sections of the same statute go into minute detail touching the powers of the drainage board. R. S. 24-418 provides that notwithstanding its authority to determine what improvements should be constructed to accomplish the purposes of the act, such improvements shall not be undertaken "until the same shall have been authorized by a vote of the taxpayers of such district at a special election to be called and held for that purpose."

Moreover, the statute clearly indicates that improvements are to be paid for, not out of the general fund, but out of the proceeds of a special levy for that purpose (R. S. 24-407, 12th par.; R. S. 24-419) or from the proceeds of a bond issue (R. S. 24-419, 24-420). Such an improvement as the raising of the elevation of a dike from 30 feet to 35½ feet cannot be regarded as repairing the dike, incurring merely an incidental expense which could properly be paid for out of the general fund of the district. In *State, ex rel., v. Thomas County Comm'rs,* 122 Kan. 850, 854, 253 Pac. 406, it was said:

"The principal purposes of the county general fund are well understood. It is the fund out of which the ordinary current expenses of conducting the county government are met. (*Railway Co. v. City of Topeka,* 95 Kan. 747, 749, 149 Pac. 697, and citations.) Incidental expenses pertaining thereto are likewise properly paid out of this fund, subject, of course, to statutory mandates and inhibitions. Of necessity some discretion touching what are inci-

dental expenses is vested in the county commissioners, since they are the financial and business managers of the county."

In *Smith v. Haney,* 73 Kan. 506, 509, 85 Pac. 550, it was said:

"The phrase 'general fund,' as applied to the fiscal management of a Kansas county, has a definite and well-recognized meaning. It covers the proceeds of a tax levied to provide for the usual current expenses."

In the oral argument it was asserted and not controverted that the existing balance of $58,611.64 in the general fund is ample to meet salaries and miscellaneous incidental expenses if the proposed expenditure to raise the dike to the 35½ foot level must be met by a special levy or a bond issue.

In view of the explicit provisions of the statute, it would be the sheerest verbal legerdemain to characterize the proposed improvement as mere repair work which can be paid for out of the general fund. The wherewithal to accomplish it must await a compliance with the statutory provisions pertaining thereto.

And this conclusion logically leads to the question of the county clerk's duty in the premises. It is suggested that he is a mere ministerial officer who has no concern with the legal questions involved. Even if so, however, he could nevertheless decline to perform a ministerial act requisite to effectuate an illegal act or purpose which other officers vested with discretion were seeking to accomplish. In *State, ex rel., v. Younkin,* 108 Kan. 634, 196 Pac. 620, it was said:

"A county clerk will not be required by mandamus to perform a ministerial duty when its performance is necessary to give effect to an unlawful act which the board of county commissioners has undertaken, although the board has full responsibility therefor and the county clerk has none." (Syl. ¶ 1.)

But the statute of 1933 (ch. 309) has imposed upon the county clerk an imperative duty to scrutinize the levies of all taxing authorities. It reads:

"Sec. 21. Any levy which may be certified to the county clerk which is in violation of the provisions of existing statutes, shall be unlawful, and in any such case it shall be unlawful for the county clerk of any county within the state to enter upon the tax roll of the county any such excessive levy; and in case of any such excess in any levy it is hereby made the duty of the county clerk and he is hereby required to reduce such levy and to extend upon the tax roll only such part thereof as will comply with the provisions of existing statutes."

Section 22 of the same statute declares a breach of this statute by the county clerk (or by any officer of a taxing district) to be a

misdemeanor subjecting him to a fine, and likewise liable to removal from office by a civil action.

In conformity with the duty thus imposed on the county clerk, it became necessary for him to scrutinize with care the budget of the drainage district filed with him. And this budget plainly showed that it was irregular in its inclusion of the item of $75,000 for "improvement projects" which is admittedly intended to pay for the construction of the additional 5½ feet of dike as a charge on the general fund. It is also irregular in that the balance of $58,-611.64 in the general fund was not "carried forward to the credit of said fund for the ensuing year," as directed by the budget law of 1933. (Ch. 316, § 10.) It is also illegal, as we have already determined, in that this improvement project budgeted at $75,000 should have been provided for by a special tax or bond issue and not out of the general fund. A tax so fraught with irregularity and illegality cannot be spread on the tax rolls by mandate of this court. (*State, ex rel., v. Comm'rs of Phillips County*, 26 Kan. 419, 425, and syl. ¶ 2.)

In view of the foregoing, it follows that case No. 31,620 should be dismissed, and in case No. 31,682 the writ prayed for should be denied.

It is so ordered.

HUTCHISON, J., not sitting.