SCHOOL DIST. NO. 2 IN TETON COUNTY v. JACKSON-WILSON HIGH SCHOOL DIST. IN TETON COUNTY, ET AL.

(No. 1917, December 17, 1935; 52 Pac. (2d) 673)

For the appellant there was a brief by *Wm. L. Simpson,* of Jackson, and *P. W. Spaulding,* of Evanston, and oral argument by *Mr. Spaulding.*

For the respondent there was a brief by *W. W. Neilson,* of Jackson, and *A. W. McCollough,* of Laramie, and an oral argument by *Mr. McCollough.*

BLUME, Justice.

This case was submitted to the trial court upon the petition and answer thereto and an agreed statement of facts. The plaintiff, School District No. 2, is a duly organized school district in Teton County, offering courses of study up to and including the 8th grade. Jackson-Wilson High School District, defendant, is a duly organized high school district in that county, and the defendant Scott is the duly qualified County Treasurer. The plaintiff never maintained a high school within the district, and never offered any high school course to any of the children therein, and never provided any attendance at any other high school except in the defendant district. This high school district is the nearest, most accessible and only available high school in the county of Teton or in the vicinity of plaintiff district, at which any children could obtain the privileges of a high school education and courses of instruction. Commencing with 1924, to 1930 inclusive, the plaintiff district had arranged for the attendance of its school children who had completed the course of study offered in the district, at the defendant's high school at Jackson, and had paid the tuition fixed by the latter, without the requirement of any permission mentioned in Section 99-325, Rev. St. 1931. During and for the year 1931-32, however, the plaintiff made no such arrangement. The electors of that district

"had not then or at any other time levied any tax or made any other provision for payment to said defendant High School District of any tuition moneys for attendance in its schools of pupils resident in said plaintiff school district, nor had the trustees of said district ever consented to any such pupils resident therein attending said high school of defendant High School District at the expense of plaintiff school district, nor had the chairman or clerk of plaintiff ever made or executed nor did said pupils or any of them ever present to defendant High School District any written statements or permission signed by said chairman or clerk or either of them that said pupils or either of them so resident in said plaintiff school district could or should attend the schools of defendant High School District."

The plaintiff school district, accordingly, having failed to pay for the tuition for the pupils therefrom properly qualified to, and who did, attend the high school in defendant district, applied to the county treasurer of the county to pay the amounts due and owing, and the treasurer, acting under Section 99-825, R. S. Wyo. 1931, transferred of the funds in his hands belonging to the plaintiff district the sums alleged in the petition, namely, $549.49, $181.68 and $580.51, which is claimed to make a total of $1380.61, but which in fact is a total of $1311.68, although the amount of $1380.61 is agreed to be the proper amount, if legally chargeable; it is claimed, however, not to be legally chargeable and that the amount was illegally withdrawn from the funds of plaintiff district. The court entered judgment in favor of the defendants and against the plaintiff. From this judgment the latter has appealed to this court.

1. Section 99-325, Rev. St. 1931, provides as follows:

"The district board shall have power to admit pupils from other districts * * * and when pupils are admitted from other districts, the district board may, in their discretion, require a tuition fee for such pupils,

based on cost per pupil of said district; provided, that no pupils shall be admitted and tuition charged therefor unless they present written statements of permission signed by the chairman and the clerk of the district, in which said pupil resides, and when it appears to the satisfaction of the district board of any district that elementary school pupils can be better provided for in other districts, or in other schools in the same district, the district boards of the districts in which the pupils reside shall pay, from the funds of the district, tuition and shall have power to pay all or part of the board and room; provided, that in case payment of tuition is refused or neglected, the board of the creditor district shall file with the county treasurer of the county in which the debtor district is situated, an itemized statement of the amount of indebtedness certified by the chairman and clerk of the district, and the county treasurer of said county shall transfer the amount of such indebtedness from the funds of the debtor district to the funds of the creditor district."

Section 99-825 provides as follows:

"All school districts within the state of Wyoming which do not maintain a four year high school shall pay tuition for pupils of such district who have completed the course offered therein and who desire to attend high school in another district. The cost of tuition as hereinafter set forth shall be paid by the district in which the pupil resides from the funds of such district; provided, that in case payment is refused or neglected, the board of the creditor district shall file with the county treasurer of the county in which the debtor district is situated an itemized statement of the amount of indebtedness, certified by the chairman and clerk of the district, and the county treasurer of said county shall transfer the amount of such indebtedness from the funds of the debtor district to the funds of the creditor district."

Section 99-826 fixes the rate of tuition, and the following section, 99-827, provides in part as follows:

"Every high school within the State of Wyoming subject to the general school laws of the state shall

receive non-resident pupils upon the basis above set forth except when it would work a hardship upon the district maintaining such high school; * * *"

It may be noted that section 99-325, supra, provides among other things that no pupils shall be admitted to attend in another district, or tuition charged, unless they present written statements of permission signed by the chairman and the clerk of the district in which such pupils reside. Such permission was not obtained. Plaintiff contends that this is fatal to defendant's claim; that such written permission was essential to hold plaintiff district liable, and it relies upon our decision in the case of State ex rel. v. School District No. 12, 45 Wyo. 365, 18 P. (2d) 1010. In that case we held that No. 12 district, without a high school, the children of which attended high school at Lusk, in district No. 1, was not liable in the absence of the permission prescribed by statute. District No. 12, however, had made arrangements for attendance at Manville, a third, and convenient, district, at an expense considerably less than that charged by district No. 1 at which the pupils in question attended. It was stated that the officials could not arbitrarily withhold their permission, and the fundamental reasons for the requirement thereof in that case were stated thus:

"Nevertheless, it seems to us, under this law, they (the officials) would have the right to decide whether they should send their high school students to another district where the expense per pupil is much higher than in a second adjoining district equally reasonably available for the purpose. Any other interpretation of this statute applicable to the situation presented, as we hold it is, would make it possible for a majority or even more of the pupils fitted for high school training to select the most expensive high school available and thus cast a most unreasonable financial burden upon the district wholly unable to bear it."

Under our holding in the case just cited, it was nec-

essary, in order that the defendant district here could charge tuition, to have permission from the officials of the plaintiff district. The proper course, in case permission was refused, would have been an action in mandamus, and the pupils and the defendant district should not have taken the law into their own hands. 38 C. J. 743; Salt Lake City v. Bernhagen, 56 Utah 159, 189 Pac. 583; People v. School Directors, 267 Ill. 172; People v. School Directors, 200 Ill. App. 250; Board of Education v. School Directors, 213 Ill. App. 91. Nevertheless, the action in the case at bar is one for money had and received, in which equitable principles may be taken into consideration, and if it appears that money sued for should not in justice and equity be recovered, the suit may be defeated, though the money came into the hands of the defendant illegally. Tobin v. Town Council, 45 Wyo. 219, 17 P. (2d) 666, 674. In the case just cited, we held that the town of Sundance could not recover money illegally paid out by it, where it received the benefit therefrom. The case at bar presents peculiarly equitable reasons why the money, or part of it, now in the hands of defendant, should not be recovered herein. Section 99-825, supra, is mandatory in requiring the furnishing of a high school education. Section 99-827 apparently is mandatory in its terms, except in particulars not applicable here. It had not, at the time in question, been decided by this court that sections 99-825 and 827 should be construed in conjunction with section 99-325, supra— that is to say, that written permission from the officials of plaintiff district was required. In fact this action was not instituted until after our decision in School District No. 1 v. School District 12, supra. Furthermore high school students from the plaintiff district had attended the high school at Jackson from 1924 to 1930 without the requirement of any such permission, and while that fact cannot, under the cir-

cumstances, be said to create an estoppel, as defendant maintains, inasmuch as arrangements had been made by the parties for such attendance during those years, yet it, in conjunction with the other facts herein, makes a call on the conscience of the court which can not be overlooked, particularly in view of the fact that no notice of the desire to discontinue the previous arrangement had been given the defendant. Plaintiff, as stated, was in duty bound to send the qualified children to high school in some district, and no district except that of the defendant was available, so that the reason why the permission above mentioned should be required is not as fundamental in this case as it was in School District No. 1 v. School District No. 12. The plaintiff has received full value for the money paid to defendant, and we think, accordingly, that, taking everything into consideration, equity should prevail in this case, unless countervailing equities or mandatory legal rules to the contrary exist.

2. Counsel for appellant claims that section 99-825, supra, is unconstitutional. He refers to Article 16, Sections 2 and 4. The provisions thereof declare that no debt in excess of the taxes for the current year shall in any manner be created except by a vote of the people. Counsel argues that the effect of section 99-825, supra, is to permit the creation of an indebtedness in violation of the foregoing provisions of the constitution by pupils attending school in another district. Circumstances may arise where that is possible, and if in such case a suit were brought to recover tuition, it might be defeated on that ground. Palmer v. School District, 115 Okl. 70, 241 Pac. 495. But that furnishes no ground for holding the foregoing provisions unconstitutional. The exercise of any power or duty of any school district or municipality might have a like effect —hiring teachers, constructing buildings, keeping property in repair. It depends on the facts. These

provisions must necessarily be construed in conjunction with the laws relating to revenue, and it is, ordinarily at least, by reason of the lack of the latter that a particular debt—not the statute under which it is created—may be rendered unconstitutional. The legislature had a right to make provision for a high school education and make it mandatory. It was said in State v. Freeman, 61 Kans. 90, 58 Pac. 959, 47 L. R. A. 67:

"The matter of education is one of public interest, which concerns all the people of the state, and is therefore subject to the control of the legislature. Municipal organizations are the creations of state authority, and all within legislative control. While education is a matter of state interest and public concern, the high school being especially beneficial to the people of the community in which it is established, the burden of maintaining it may be rightfully cast upon them * * *. If the obligations which the municipalities are required to assume and discharge for institutions and necessities of purely public concern, and for which taxes may ordinarily be levied, the power of the legislature in respect to them is supreme, and its determination, if reached by constitutional methods, is not subject to review."

In Carey v. Board, 113 Kans. 398, 214 Pac. 792, dealing with the same subject as that involved in the case at bar, the court said in part:

"It (the school district) is an auxiliary organization of the state, and all of its powers and rights have been acquired from the state, and it can only exercise them in accordance with the conditions annexed by the legislature. It is subordinate to the legislative will, and it may require school districts to impose taxes, erect buildings, employ teachers, and fix the conditions upon which pupils shall be admitted to the schools. The matter of the maintenance of common and high schools is not a matter of mere local interest but is one of state concern, and the legislative power in respect to such schools is supreme."

In Fiske v. Huntington, 179 Mass. 571, 61 N. E. 260, also dealing with the subject matter involved in this case, the court said:

"The only other question is whether the statute is constitutional. That some proper provision for the education of children in high schools and other public schools may be required of towns by the legislature, is not questioned. It is equally clear that in the making of such a provision, payment of tuition by a town in a school where tuition is charged, is within the general purposes for which money may be raised by taxation, unless there is some special constitutional prohibition of such payments."

We cannot, accordingly, hold the provisions of the law, requiring a district to provide for a high school education, or payment of tuition to another district for that purpose, to be in violation of the constitution.

We come then to the consideration of that part of Section 99-825, supra, (and Sec. 99-325) which provides that the county treasurer may, upon presentation of an itemized statement, transfer the funds of a district without high school to another district with a high school at which qualified persons from the former attend. That provision is distinct and separable from the first part of the section, and we shall consider it only in so far as necessary to determine whether or not the principle of equity heretofore mentioned should be applicable herein. The statute authorizes the transfer of any and all funds of a district no matter how they may be derived. But it goes too far. Section 13 of Article 15 of our Constitution provides that "no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, *to which only it shall be applied.*" Kansas has a similar constitutional provision, with a meaning the same as ours, reading: "No tax shall be levied except in pursuance of law, which shall dis-

tinctly state the object of the same, to which object only such tax shall be applied." And from an early day, and in numerous cases, this provision has been construed to mean that no fund of a school district or local community, raised by taxation for a specific purpose, can be diverted to any other purpose, except only when the purpose has been fully subserved, and a surplus remains. The National Bank v. Barber, Treasurer, 24 Kans. 534; State v. Emporia, 57 Kans. 710, 47 Pac. 833; State v. Butler, 77 Kans. 527, 535, 94 Pac. 1004 (as to surplus); City of Frankfort v. Warders, 119 Kans. 652, 240 Pac. 590; State ex rel. v. County Comm'rs., 122 Kans. 850, 253 Pac. 406; State ex relv. v. Board of Comm'rs., 128 Kans. 437, 278 Pac. 54. So in Bone v. Bowen, 20 Ariz. 592, 598, 185 Pac. 133, under a constitutional provision like that of Kansas, it was said that "public money can only be raised and used for specific purposes, and these purposes must be pointed out by law." In Ohio it was held that a law, attempting to transfer funds of a county, raised for the purpose of supporting the blind in such county, is in contravention of a constitutional provision exactly like ours. State ex rel. v. Edmondson, 89 Oh. St. 351 at 364. In Sheldon v. Purdy, 17 Wash. 135, 49 Pac. 22, it was said:

"Section 5, Art. 7 of the constitution provides, 'no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied.' This is an elementary doctrine in taxation, and without the constitutional declaration, it has been held almost uniformly that there could be no diversion of moneys collected by taxation for a special purpose, and placed in a fund created for such purpose. Section 2702, 1 Hill's Code, evidently imposed the duty upon the county treasurer to pay, out of any moneys belonging to the school district in the special interest fund for payment of interest upon bonds, any moneys in such fund, on presentation of interest bonds, and

can go no further. Notwithstanding its express declaration, that section, in so far as it purports to command the treasurer to pay interest coupons from moneys raised by taxation for another purpose, is unconstitutional and therefore void."

And in State ex rel. v. Henry, 28 Wash. 38, 68 P. 368, the court, after quoting the same constitutional provision, said:

"From this last section of the constitution it seems almost too plain for argument that the funds of the county raised by taxation for general county purposes cannot be applied to the payment of assessment of costs against school lands improved in a local assessment district."

So In re Opinion of the Judges, 59 S. D. 469, 240 N. W. 600, the court said:

"Secondly, with particular reference to the possibility of employing moneys (either state or county) now on hand or to accrue under present levies for the furnishing of feed or making of feed loans, article 11, Sec. 8, Constitution of the State, provides: 'No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied.' Under this section we are of the opinion that moneys now on hand (or hereafter to be received) as the result of payment of taxes * * * already levied, and the proceeds of which have been appropriated, must be applied to the purposes for which they were levied * * * and we think that the same could not now be diverted, even by legislative action, to any other purpose."

The court cites White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397, which holds to the same rule, citing many cases. There are some cases which are seemingly in conflict with the cases cited, holding that the constitutional provisions heretofore quoted relate only to taxes levied for general state purposes. 61 C. J. 98. But the con-

flict, we think, is more apparent than real. In some of the states, as in New York, the constitution differs from ours. And the holding of Stinson v. Thorson, 34 N. D. 372, 385, 158 N. W. 351, that the North Dakota Constitution, reading exactly like ours, differs from the Kansas Constitution, is clearly wrong. The statement in Sheldon v. Purdy, supra, stating that courts hold to the rule that a fund, raised by taxation for one purpose, cannot be diverted to another even without reference to the constitution, is borne out by 56 C. J. 752; 61 C. J. 751 and subsequent pages; and see Burbank Irr. Dist. v. Douglas, 143 Wash. 385, 255 Pac. 360 and cases cited. The funds so raised are held to be trust funds, and that it is inequitable to divert them to a different purpose. Hence it is clear that money raised by the plaintiff district at its annual school meeting for certain purposes, and other taxes raised under the law for specific purposes, cannot be diverted, unless the purpose is fully satisfied and a surplus remains. There can be no justice or equity in taking from a district money raised by them through taxation, intended by them, or by the law, to be applied to certain specific ends, and divert the proceeds to a different purpose, thereby depriving the district of meeting needs, perhaps far greater than sending pupils to a high school in another district. But school districts have money not raised by taxation. That is true particularly with money distributed to them by the state, and it has been held that such money may be devoted by the legislature to such school purposes as it deems proper. Board of Education v. Board of Education, 10 Ohio C. C. Rep. 617, 619. The legislature, by Sec. 99-825, supra, has attempted to apply such funds to the payment of tuition. Plaintiff district, at its annual meeting, knew of this law. It knew of its mandatory duty to give the proper pupils a high school education. It cannot, therefore, claim that the rule of equity men-

tioned in the case of Tobin v. Town Council of Sundance, supra, should not apply to funds to which no particular equity for specific ends is attached. If, accordingly, defendant district can show that the money transferred to it by the county treasurer was in whole or in a definite and separable part derived from the distribution made by the state, or was not raised by taxation as hereinabove mentioned, it may have such money applied on its claim.

No showing of that kind has heretofore been made. The judgment of the trial court must, accordingly, be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

KIMBALL, Ch. J., and RINER, J., concur.