No. 29,019.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SALINE, *Defendant.*

(278 Pac. 54.)

Opinion filed June 8, 1929.

*William A. Smith*, attorney-general, for the plaintiff.

*Morris Johnson*, county attorney, for the defendant; *Roland Boynton*, attorney for The State Highway Commission, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: The state upon the relation of the attorney-general, Hon. W. A. Smith, brought this action and named the board of county commissioners of Saline county as defendant. The purpose of this action is to obtain a declaratory judgment as to the validity of "An act relating to the construction and improvement of the state highway system by counties and other persons and agencies" (Laws 1929, ch. 229, § 1), about which an actual controversy exists. The statute provides:

"That if any county or other political subdivision of this state desires to immediately improve any section of the state highway system within any county, which has been designated as a part of the state highway system, the state highway commission may enter into an agreement with such county or other political subdivision to finance the construction or reconstruction of said highways or section thereof. No county shall be allowed to issue bonds or borrow money to carry out any provisions of this act: *Provided, however,* That the funds so advanced shall be without interest: *Provided*

*further,* That the commission shall make repayment to said county or other political subdivision annually as the funds are available, and to apportion for such construction or reconstruction until the amount so advanced has been repaid. The total amount of agreement to be redeemed in any one year shall not exceed one million dollars."

In behalf of the state it is alleged that the commissioners of Saline county, without authority to do so, passed a resolution declaring that it was desirable to improve two highways in that county, which constituted a part of the state highway system, by hard surfacing them, and that in order to secure the immediate improvement of these highways the county enter into an agreement with the state highway commission to advance to that commission $210,000 to assist in financing the improvement, that amount to be obtained from the county road fund, from the county bridge fund, from the county general fund, from the sinking fund, from the bond fund, from the twenty per cent state road fund, and by issuing deficiency warrants against each of the above funds for such amounts as may appear to be expedient and proper.

It was resolved that the sums so advanced to the state highway commission should be expended by that commission upon the construction of the highways, at least to an amount equal to the amount advanced by the county, and that such principal sum, without interest, should be repaid to the county on or before the first day of September, 1930. This step was taken under and in pursuance of the provisions of the quoted statute. The state alleges that the resolution was passed, and the proposal to advance the named funds is without authority and would be a wrongful exercise of power by the board of county commissioners, and that unless ousted the defendant will advance the funds mentioned to the state highway commission, thus diverting them to a purpose other than the one for which the taxes were levied. A demurrer to the petition was filed, and the question presented here is whether the proposed advances from the different funds of the county may be made within the limitations of the constitution. The county road fund is levied under the authority of R. S. 68-519, for the construction, improvement and maintenance of county roads. It is provided that the levy should not be less than one-fourth of a mill nor more than one and one-half mills on the dollar on all the property in the county, unless directed by a vote of the electors. The legislature, evidently apprehending that bridges and culverts might be regarded

as a part of county roads, specifically provided that no part of the fund should be used to construct or repair bridges or culverts.

The county bridge fund is raised by a levy authoried by R. S. 68-1102 and following sections. It provides for the construction and repair of bridges and culverts, under limitations as to the extent of the levy and as to the apportionment of the fund for bridges on county and township roads. The amount needed for county and township bridges and culverts for the year is to be determined by the county commissioners after consultation with the county engineer, and after they have held a public meeting of electors to advise as to the particular bridges to be constructed or repaired during the taxing period.

As to the county general fund, the statute provides that the county commissioners shall levy a county tax sufficient to pay all county charges and expenses incurred during the year and also any delinquencies that may exist. (R. S. 19-241.) This fund is raised for the ordinary current expenses of conducting the county government, and the board is to exercise its judgment in determining the amount necessary to be raised to defray such expenses. The statute provides that the levy for this purpose is in addition to taxes for other purposes.

The bond and sinking funds are raised to pay outstanding bonds and the interest thereon and to raise money and place it in the sinking fund during the period the bonds are to run sufficient to pay such bonds when they become due. These are raised for specific purposes, and it is provided that if any of the funds so raised are diverted or used for another purpose by anyone he shall be guilty of a misdemeanor and subject to penalties of fine and imprisonment. (R. S. 10-117.) As to authority to provide sinking funds, see R. S. 10-118.

The proposed issuance of deficiency warrants to be advanced out of all the different funds mentioned to the state highway commission is without any statutory authority. This action contemplates not only the loaning of the special funds raised by taxation, which are in existence, but also pledges the funds to be raised by taxation in the future by issuing what they call deficiency warrants against all of the funds. It may be conceded that there is authority in the legislature to control the finances not only of the state but also of its municipalities, and to provide for the transfer of funds from one to

the other unless prohibited by constitutional limitations. There is a limitation that "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object only such tax shall be applied." (State Constitution, art. 11, § 4.) This restriction is an insuperable barrier to the loaning of the funds named or to their application to the building of state highways. The taxes were levied in pursuance of law for specific purposes, and the funds derived from these levies must be exclusively applied to those purposes. Each of the funds is distinct from the others and it is beyond the power of the commissioners or others to divert funds raised by taxation for one purpose and apply them to another. It would be a violation of the constitution to apply the bond fund to the building of county roads or to apply the sinking fund to the building of county bridges. No more can the funds raised for each of the specific purposes mentioned be loaned to the state highway commission or applied to the building of state highways. State highways and county and township highways are not in the same class, nor are they under the same control. In the classification made by the legislature, highways are specifically placed in groups, one of state highways and all the others into county and township roads (Laws 1929, ch. 224, § 1), and state highways cannot be re-garded as county roads.

The effect of the act in question is to provide for the loan of county funds to the state highway commission, and in the act itself there is a provision that: "No county shall be allowed to issue bonds or borrow money to carry out the provisions of this act." The state highway commission is to borrow the money without in-terest, and pay it back to the county, when? It is to be paid back annually, if the highway commission has funds available for that pur-pose, but it is not to be paid then or at any particular time if funds are not available. If the commission deemed it best to spend its own funds provided from other sources on state highway projects that it deemed to be very necessary and pressing, it might postpone paying back the borrowed money for several years. This no-interest loan to be made by the county commissioners to the highway com-mission is to be taken from the funds mentioned without regard to whether there is a surplus in them, and also as to whether such funds are actually needed for current expenses of the county or to meet obligations which had been assumed by the county in the building

of county roads and bridges or for the payment of county bonds and interest or to provide sinking funds to meet such bonds.

The deficiency warrants proposed to be issued by the county commissioners to be used by the state highway commission in building state roads afford an opportunity to create evidences of a large indebtedness when there was in fact no indebtedness, and if the funds were depleted by advancing and loaning the funds, and warrants were presented when the treasury was empty and these were indorsed "Not paid for want of funds," the holders of the warrants would draw interest on them. (R. S. 10-807.) Such obligations are somewhat in the nature of bonds or in a sense the borrowing of county money to carry out the provisions of the act. This would be not only a diversion of the funds but would conflict with statutory provisions regarding deficiencies. It is unlawful for the commissioners to levy a tax in each year for more than is required for county charges and expenses—than is necessary to defray such charges and expenses, and also to make up any delinquent taxes of the same year. (R. S. 19-241.) Provision is made for the issuance of warrants which shall specify the nature of the claim or service and the fund out of which they are to be paid. (R. S. 10-801.) If the claim presented is not payable out of the fund upon which it is drawn, the warrant would necessarily be invalid. The invalidity would also appear from the records of the county clerk, who is required to keep a correct record of all the warrants drawn on the county treasurer, showing its number, date, the fund on which it is drawn and the person to whom payable, and it must, before delivery, be countersigned by the treasurer. (R. S. 10-804, 10-805.) If the claim presented is not legally payable out of the fund on which it is drawn, any warrant issued thereon would be invalid and those instrumental in the issuance, delivery or payment of such warrants would be personally and criminally responsible. (*State v. Pierce*, 52 Kan. 521, 35 Pac. 19.) However commendable the purpose to aid in the early construction of state highways, it is clear that the means adopted by the legislature to accomplish the purpose, contravenes the constitution, and the act being void, the proposed action of the defendant is without authority of law.

Judgment will go in favor of the plaintiff.