Merrimack,
No. 5127.

MANCHESTER FEDERAL SAVINGS AND LOAN ASSOCIATION *& a.*

*v.*

STATE TAX COMMISSION *& a.*

Argued April 3, 1963.
Decided June 7, 1963.

*Booth, Wadleigh, Langdell, Starr & Peters (Mr. William J. Starr, Jr.* orally), for the plaintiffs.

*William Maynard,* Attorney General and *Frederic T. Greenhalge,* Assistant Attorney General (*Mr. Greenhalge* orally), for the defendant.

*David L. Nixon* (by brief and orally), for The New Hampshire Credit Union League, intervenor.

*Harrison E. Smith* (by brief and orally), for the intervening cooperative banks.

*Upton, Sanders & Upton (Mr. Richard F. Upton* orally), for New Hampshire Association of Savings Banks, *amicus curiae.*

KENISON, C.J.   Prior to 1961 the taxation of banks in this state (RSA ch. 84) and in particular the savings bank tax has had a checkered career. *State* v. *Griffin,* 69 N. H. 1, 32-33. Chief Justice *Doe* considered the savings bank tax "an anomaly" (*Railroad* v. *State,* 62 N. H. 648, 649) which was sustainable "on peculiar grounds of public policy." Note, Doe of New Hampshire:   Reflections on a Nineteenth Century Judge, 63 Harv. L. Rev. 513, 522 (1950).   The savings bank tax continued to be treated in a class by itself in subsequent discussions of taxation and constitutional equality. *Wyatt* v. *Board of Equalization,* 74 N. H. 552, 570; *Eyers Woolen Co.* v. *Gilsum,* 84 N. H. 1, 25-26.   In 1911 the Legislature denominated it "an excise tax for the privilege of conducting the business of a savings bank or other such corporation." Laws 1911, *c.* 194;   RSA 84:9.   Prior to 1961 building and loan associations and cooperative banks were taxed (RSA 84:14);   no tax was placed on federal savings and loan associations following their creation in 1933;   and state-chartered credit unions have not been taxed since 1929. Laws 1929, *c.* 46; RSA ch. 394.

In recent years the bank tax (RSA 84:9), because of numerous exemptions (i.e. deposits invested in United States bonds and deposits invested in New Hampshire mortgages at an interest rate not exceeding 5% on April 1 of each year) has yielded less and less revenue.   This enabled some financial

institutions by changing investments as of April 1 to minimize the tax substantially or avoid it altogether. Those financial institutions which could not or did not change their investments as of April 1 were penalized by paying taxes not borne by others in the banking business. This discrimination and inequality gave impetus to a growing criticism of the pre-1961 bank tax, both within and as well without banking circles, as both ineffectual and unrealistic. This brings us to the challenged legislation. Laws 1961, c. 249; RSA 84:16-a to 16-e (supp).

The 1961 act repealed the former bank tax (RSA 84:8-16) and imposed a franchise tax in its place equal to one per cent of the dividends paid during the preceding year by each institution holding savings on deposit or in shares. The new tax was extended to cover federal savings and loan associations and cooperative banks but not state-chartered credit unions.

The plaintiffs do not claim that federal savings and loan associations have "a total cloak of immunity from taxation by State authority." They do contend, however, that the taxation of federal savings and loan associations without similar taxation of state credit unions is discriminatory and in violation of federal law. *Commissioner of Corporations and Taxation* v. *Flaherty*, 306 Mass. 461. The pertinent part of 12 U.S.C.A., s. 1464 (h) reads as follows: " . . . No State . . . shall impose any tax on [federal savings and loan associations] . . . greater than that imposed . . . on other similar local mutual or cooperative thrift and home-financing institutions." There is authority for the proposition that state credit unions are dissimilar to federal savings and loan associations so that the latter may be taxed under this statute although the former are not. *State* v. *Minnesota Federal Savings & Loan Ass'n.*, 218 Minn. 229. In the present case the plaintiffs requested a finding that New Hampshire credit unions and federal savings and loan associations "perform basically the same functions in the field of receiving money from members and making loans upon the security of real estate mortgages." The Trial Court denied this request. The following finding, however, was made: "That the primary purpose of state chartered credit unions is to make personal secured and unsecured loans to their members, while the Petitioners' principal purpose is to make loans upon homes and business property." There is support in this record for the

Trial Court's actions which were also consistent with *State* v. *Minnesota Federal Savings & Loan Ass'n, supra.*

Since the first credit union in the United States was established in Manchester, New Hampshire (St. Mary's Co-operative Credit Association) in 1909 by a special act of the Legislature (Laws 1909, *c.* 303), credit unions have been generally regarded as different from other banking institutions. Wilson, Common Sense Credit 1, 47 (1962). See Bridewell, Credit Unions, *c.* 32 (1962). The fact that this first credit union subsequently became a bank (Laws 1961, *c.* 342) does not prove that credit unions (RSA ·ch. 394) are synonymous with federal savings and loan associations, cooperative banks and savings banks. The federal savings and loan associations have from 85% to 90% of their assets in first mortgage loans while the credit unions have only 35% of their assets invested in real estate mortgages. Loans of credit unions are smaller in average amount ($767 in 1961) than the plaintiffs. For example one of the six plaintiffs made mortgage loans averaging $4,200 per loan. Reports of the Bank Commissioner disclose that credit unions have smaller assets, grant more unsecured loans and fewer real estate loans, own less property and real estate, than the plaintiffs and other banks. Credit unions are restricted by statute in the payment of compensation to officers (RSA 394:29) and by member-voting limitations (RSA 394:11). Credit unions are engaged primarily in short-term loans and this is different from real estate loans which are usually long·term. The Trial Court could find as it did that "there are substantial differences in nature. and practice between state-chartered credit unions and federal savings and loan associations . . . ." Of the thirty-six state-chartered credit unions there were only three that would not qualify as typical credit unions and that may be "operating on the fringes of the credit union act."

We do not blink at the fact that the state credit unions have similarities to the plaintiffs and the co-operative banks, that competition for the loan dollar exists, and that the State may tax state credit unions in the future as it did in the past (Laws 1921, *c.* 40, *s.* 22). However we conclude that distinctions between credit unions on the one hand and federal savings and loan associations and cooperative banks on the other are substantial enough to warrant the exemption of the former and the

inclusion of the latter without violating 12 U.S.C.A., *s.* 1464 (h). These distinctions in size of operation, statutory restrictions and provisions, lending policy, ratio of real estate and unsecured loans to total assets, compensation of officers and in profit-making, cannot be deemed to be negligible. The Legislature has wide powers in the classification of subjects of taxation. *Havens* v. *Attorney General*, 91 N. H. 115; *Opinion of the Justices*, 97 N. H. 543; *Opinion of the Justices*, 101 N. H. 549, 558. The classification of credit unions as exempt from the franchise tax on banks is a reasonable one which the Legislature had the power to enact without denial of due process or equal protection of the law under either the state or Federal Constitutions. See *Opinion of the Justices*, 94 N. H. 506, 509.

RSA 84:16-e (supp) provides that the nonresident portion of the bank tax shall be retained by the State. The portion thereof collected from institutions subject to state examination is "applied against the cost of such examination and supervision." The portion thereof collected from institutions not subject to state examinations (i.e. federally-chartered institutions such as the plaintiffs) is expended for state aid to education. RSA 198:8-15. The State does not and cannot examine the plaintiffs and hence assesses no cost of examination against them to which the same deduction could be made applicable. It is contended, therefore, that the bank tax is fatally discriminatory to the plaintiffs and the co-operative banks.

The proceeds of the franchise tax on banks are distributed to defray the cost of examining banks and for public education which are both public purposes. RSA 84:16-e (supp). Not all taxpayers, because of differences in corporate structure or differences in circumstances, are able to participate equally in the benefits of these public purposes. *Duncan* v. *Jaffrey*, 98 N. H. 305; *School District* v. *Prentiss*, 66 N. H. 145, 146. The bank tax operates on all banking institutions specified in RSA 84:16-a (supp) at the same rate. Neither the plaintiffs nor any taxpayer can complain that the distribution of a valid tax after its collection must be allocated to a specific purpose so long as it is devoted to a public use. See *Carling Brewing Co.* v. *State Liquor Commission*, 102 N. H. 284, 289-290; *Board of Supervisors* v. *Stanley*, 105 U. S. 305. "So long as the use is a proper one, allocation to a particular use of a part or all

of a general or special tax is in the legislative discretion." *Opinion of the Justices*, 88 N. H. 500, 510.

We conclude that the franchise tax (Laws 1961, *c.* 249; RSA 84:16-a — 16-e (supp)) is valid, that it violates no provision of the state or Federal Constitution, or Federal statute; that it is based on a reasonable legislative classification and that the distribution of the tax under RSA 84:16-e (supp) is not discriminatory.

*Petition dismissed.*

LAMPRON, J., did not sit; the others concurred.