Kevin Hill Brown County Attorney Courthouse, 601 Oregon Street Hiawatha, Kansas 66434-2283
Dear Mr. Hill:
You request our opinion concerning the neighborhood revitalization act, K.S.A. 1995 Supp. 12-17,114 et seq. (act) which is designed to improve blighted areas in municipalities by encouraging property owners to improve their properties through the use of property tax rebates. The act authorizes a municipality to designate an area as a neighborhood revitalization area and then develop a revitalization plan. K.S.A. 1995 Supp. 12-17,116 and 12-17,117. A neighborhood revitalization fund is created and any increment in ad valorem property taxes resulting from the improvements by a taxpayer to his or her property in the revitalization area is credited to the fund and used to return all or a portion of the increment to the taxpayer in the form of a rebate. K.S.A. 1995 Supp. 12, 17, 118.
Your initial concern regarding the facial constitutionality of the act is difficult to address in the absence of a specific query that directs us to a potential constitutional objection. However, we note that the neighborhood revitalization act is similar to the statutes concerning the redevelopment of a city's central business district. (See K.S.A. 1995 Supp. 12-1770 et seq. which authorizes a city to issue bonds for the refinancing of redevelopment projects in blighted areas. Increase in property taxes as a result of the redevelopment used to pay off the bonds.) In State ex rel. Schneider v. City of Topeka, 227 Kan. 115
(1980), those statutes withstood constitutional scrutiny when the Kansas Supreme Court concluded that there was no unlawful delegation of legislative power to cities in determining the boundaries of a central business district. Should the neighborhood revitalization act face a similar constitutional challenge, it is our opinion that the Schneider
case may apply to defeat the objection.
Your second question is whether the county may designate the entire county as a neighborhood revitalization area. K.S.A. 1995 Supp. 12-17,116
states as follows:
 "The governing body of any municipality may designate any area within such municipality as a neighborhood revitalization area if the governing body finds that one or more of the conditions as described in subsection (b) of K.S.A. . . . 12-17,115 exist and that the rehabilitation, conservation or development of the area is necessary to protect the public health, safety or welfare of the residents of the municipality." (Emphasis added.)
Neighborhood revitalization area is defined at K.S.A. 1995 Supp.12-17,115(b) as follows:
"`Neighborhood revitalization area' means:
 "(1) An area in which there is a predominance of buildings or improvements which by reason of dilapidation, deterioration, obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, the existence of conditions which endanger life or property by fire and other causes or a combination of such factors, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency or crime and which is detrimental to the public health, safety or welfare;
 "(2) an area which by reason of the presence of a substantial number of deteriorated or deteriorating structures, defective or inadequate streets, incompatible land use relationships, faulty lot layout in relation to size, adequacy, accessibility or usefulness, unsanitary or unsafe conditions, deterioration of site or other improvements, diversity of ownership, tax or special assessment delinquency exceeding the actual value of the land, defective or unusual conditions of title, or the existence of conditions which endanger life or property by fire and other causes, or a combination of such factors, substantially impairs or arrests the sound growth of a municipality, retards the provision of housing accommodations or constitutes an economic or social liability and is detrimental to the public health, safety or welfare in its present condition and use; or
 "(3) an area in which there is a predominance of buildings or improvements which by reason of age, history, architecture or significance should be preserved or restored to productive use."
When construing a statute, a court will give the words their natural and ordinary meaning. State ex rel. Stephan v. Kansas Racing Comm'n,246 Kan. 708 (1990). The word "within" means "inside the bounds of a place or region" [Webster's 3rd New International Dictionary 2627 (1986)], and it could be argued that the act allows a municipality to designate all of the area encompassed "within" its boundaries as a revitalization area if one or more of the conditions described in K.S.A. 1995 Supp. 12-17,115 exist and the municipality makes the required finding in K.S.A. 1995 Supp. 12-17,116. However, we do not think that K.S.A. 1995 Supp. 12-17,116 should be construed to include an entire municipality.
It is our opinion that K.S.A. 1995 Supp. 12-17,116 is ambiguous on the issue of the size of the neighborhood revitalization area, and, therefore, we construe it with the purpose of giving expression to the legislative intent and purpose of the neighborhood revitalization act.Jackson v. City of Kansas City, 235 Kan. 278 (1984). In determining that intent we are not limited to a mere consideration of the language used but review the statute's historical background and the purpose to be accomplished. State v. Freeman, 236 Kan. 274 (1984).
The legislative history indicates that the act was aimed atneighborhood stabilization and preventing deterioration in the central section of a city. Minutes, House Committee on Local Government, February 8, 1994. We also note that the title of the act — the Kansasneighborhood revitalization act — may be considered in determining the legislature's intent. Arredondo v. Duckwall Stores, 227 Kan. 842
(1980). Finally, before an area can be designated as a revitalization area it must meet one or more of the conditions listed in K.S.A. 1995 Supp. 12-17,115(b) and the governing body must make a finding that the rehabilitation of the area is necessary to protect the welfare of the municipality's residents. As you mentioned in your letter, it is doubtful that an entire municipality would meet such requirements and any attempt by the governing body to do so may subject the action to a legal challenge. In light of the legislative history, it is our opinion that the neighborhood revitalization act authorizes a municipality to designate only one or more areas for revitalization and not the entire municipality.
Your third question is if the act is repealed prior to the expiration of the maximum years of eligibility for rebate, is the city required to continue paying the rebate payments.
K.S.A. 1995 Supp. 12-17,118(d) states, in relevant part, as follows:
 "(d) Any increment in ad valorem property taxes levied by the municipality resulting from improvements by a taxpayer to property in a neighborhood revitalization area may be credited to the fund for the purpose of returning all or a part of the property increment to the taxpayer in the form of a rebate. Applications for rebates shall be submitted in the manner and subject to the conditions provided by the revitalization plan adopted under K.S.A. . . . Supp. 12-17,117. Upon approval of an application received hereunder the municipality shall rebate any incremental increases in ad valorem property tax resulting from the improvements within 30 days of payment by the taxpayer."
Ordinarily, when a right accrues under a statute which is subsequently repealed, the right is unaffected by the repeal. K.S.A. 1995 Supp. 77-201First; Keller v. Board of Trustees of Coffeyville Community College,12 Kan. App. 2d 14 (1987). Furthermore, a municipality may be liable in quasi-contract or on an implied contract theory should it cease making rebate payments because the taxpayers could argue that they improved their properties in reliance upon the expectation of a rebate. [See
McQuillin, Municipal Corporations, section 29.104.10 and 29.110 (3rd ed.)]. In short, it is our opinion that should the act be repealed prior to the expiration of a rebate payment period, the taxpayer will be entitled to continue receiving the rebate payments.
Your last question is whether the act allows rebates to subsequent owners of property when the property is sold by the taxpayer who improved the property. Subsection (d) of K.S.A. 1995 Supp. 12-17,118 provides that the rebate is paid to the taxpayer who actually made the improvement to the property and, therefore, the rebate should be paid to the taxpayer regardless of whether the property is sold.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm