The Honorable Jim Yonally State Representative, 16th District 10039 Mastin Drive Overland Park, Kansas 66212
Dear Representative Yonally:
You request our opinion regarding whether a unified school district may constitutionally transfer monies from its capital outlay levy fund into its general fund. You present the premise that the transfer would be authorized through amendment of state statute, such amendment including a provision that the transfer is subject to the same protest option as currently exists in statutes regarding establishment of the capital outlay levy.
The board of education of any unified school district is authorized to adopt a resolution for the purpose of making an annual tax levy upon the taxable tangible property in the school district as a means of raising monies:
 "[F]or the purpose of acquisition, construction, reconstruction, repair, remodeling, additions to, furnishing and equipping of buildings necessary for school district purposes, including housing and boarding pupils enrolled in an area vocational school operated under the board, architectural expenses incidental thereto, the acquisition of building sites, the undertaking and maintenance of asbestos control projects, the acquisition of school buses and the acquisition of other equipment and for the purpose of paying a portion of the principal and interest on bonds issued by cities under the authority of K.S.A. 12-1774, and amendments thereto, for the financing of redevelopment projects upon property located within the school district."[1]
The resolution is subject to protest by the electorate of the school district.[2] The tax levy may be assessed if no protest petition is filed within 40 days of the last publication of the resolution or if the electorate approves the resolution in an election called pursuant to the filing of a valid protest petition.[3] All monies raised through the tax levy, "except for an amount to pay a portion of the principal and interest on bonds issued by cities under the authority of K.S.A. 12-1774, and amendments thereto, for the financing of redevelopment projects upon property located within the school district," are to be deposited in the school district's capital outlay fund.[4] Monies deposited in this fund are available for making the purchases designated in K.S.A. 72-8804. Any portion of the capital outlay fund which is not currently needed by a unified school district may be applied to investments authorized by K.S.A. 12-1675 or in designated direct obligations of the United States government.[5] "All interest received on any such investment shall upon receipt thereof be credited to the capital outlay fund."[6]
"It may be conceded that there is authority in the Legislature to control the finances not only of the state but also of its municipalities, and to provide for the transfer of funds from one to the other, unless prohibited by constitutional limitations."[7] Section 5
of Article 11 of the Kansas Constitution states that "[n]o tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." The purpose of Article 11, Section 5 is to prevent the levy of a property tax[8] for one purpose and the use of the funds raised thereby for another purpose.[9] While courts in other states have interpreted similar state constitutional provisions as applying only to ordinary and general taxes assessed for state purposes, Kansas courts have determined the provision applies as well to levies assessed at the local level for local purposes.[10]
Neither the Legislature nor the electors of a local taxing district have the authority to override the commands of Article 11, Section 5. The Legislature has in the past amended or enacted statutes that were intended to allow monies held in a specific fund of a local taxing district to be expended for purposes other than those that were statutorily authorized at the time the levy was initiated. The Kansas Supreme Court has consistently held that such attempts violate Section 5 of Article 11.[11] Likewise, a transfer of monies authorized by popular vote of the electors in a local taxing district violates the constitutional provision when the use of the monies is not recognized in the statute authorizing the tax levy.[12]
Monies derived from a property tax and currently on hand in a school district's capital outlay fund are raised for those purposes set out in K.S.A. 72-8804. These monies may not now be used for other purposes. Any attempt by the Legislature or the electors of a unified school district to provide expenditure of those monies for any other purpose violates Section 5 of Article 11 of the Kansas Constitution.
The Kansas Supreme Court has, however, recognized that transferring a surplus held in a property tax levy fund of a local taxing district does not violate Section 5 of Article 11.
"The object of the provision of the Constitution is to prevent the levy of a tax for one purpose and the use of the funds raised thereby for another purpose. To levy a tax to build a bridge and divert the funds so raised to the erection of county buildings, or to levy a tax for general purposes and use the funds for the erection of a courthouse or to improve a road, is exactly what the Constitution prohibits. But there is such a thing as surplus funds which arise by reason of the fact that all the money raised for a special purpose is not always required for the accomplishment of the purpose. It is impossible to raise by taxation an exact amount. If, for instance, a bridge is to cost $5,000, and a tax levy is made at a certain rate, it is impossible for anyone to estimate in advance the exact amount that will be collected under the levy. There is therefore usually a surplus which Bouvier defines to be `that which is left from a fund which has been appropriated for a particular purpose; the remainder of a thing; the overplus; the residue.' (2 Bouv. Law Dict. p. 1086.) Manifestly it is the duty of the authorities in levying a tax to exercise good faith, and not purposely levy a tax which would create an unnecessary surplus."[13]
The Court draws a distinction between monies in "the general fund . . . not otherwise appropriated after all other running expenses of [the governing body] shall have been provided for" and those monies that constitute a surplus. The former "in express terms provides that funds raised for one purpose shall be applied to another."[14] The former provision would allow the governing body to assess an inflated levy in order to obtain monies that could potentially be diverted to purposes other than those that are permitted under the statute authorizing the tax levy.[15] The latter, however, does not have this effect as the levy must be geared towards raising only those monies that are necessary to meet the purposes expressly authorized by the statute under which the levy is assessed.[16]
It is questionable whether any monies in the capital outlay fund of a unified school district could be deemed a surplus unless the school district ceases to exist. The purposes for which monies in the capital outlay fund may be expended include repairing, remodeling, furnishing and equipping buildings and acquiring school buses and other equipment for school district purposes. These purposes continue indefinitely. If the monies in the capital outlay fund exceed current needs, the school district has the option of lowering or forgoing the levy.[17] Amending the capital outlay statutes to authorize transfer of any portion of the monies derived from a property tax and held in the capital outlay fund as a surplus would in all likelihood have no actual affect.[18]
The Legislature does have authority to add purposes for which monies in a property tax levy fund may be expended. "There is no language in Article 11, Section 5, which precludes a tax levy statute from having more than one object, so long as the legislature establishes a formula for the allocation of tax funds to each of the objects described in the tax levy statute."[19] Therefore, the Legislature may amend a statute such that the monies derived from the tax levy authorized by the statute may be expended on newly added purposes. The amendment must include a formula that designates the portions of the assessment that should be allocated to the various purposes authorized by the statute. The allocation is applicable only to the monies that are raised after enactment of the amendment.[20]
A unified school district is authorized to transfer monies from its general fund into its capital outlay fund.[21] Monies deposited into the general fund include:
 "[T]he proceeds from the tax levied under K.S.A. 72-6431, and amendments thereto, all amounts of general state aid under this act, payments under K.S.A. 72-7105a, and amendments thereto, payments of federal funds made available under the provisions of title I of public law 874, except amounts received for assistance in cases of major disaster and amounts received under the low-rent housing program, and such other moneys as are provided by law."[22]
Potentially, some monies held in the capital outlay fund may have been derived from sources other than a property tax. As previously noted, Article 11, Section 5 applies only to taxes levied upon property.[23]
Those monies that are not derived from a property tax and that are transferred from the general fund to the capital outlay fund are not subject to the prohibition set forth in Article 11, Section 5. The Legislature, therefore, may provide for the return of the non-property tax monies back to the general fund.
In review, monies derived from a property tax and currently on hand in a school district's capital outlay fund were raised for those purposes set out in K.S.A. 72-8804. These monies may not now be used for other purposes. Any attempt by the Legislature or the electors of a unified school district to provide expenditure of those monies for any other purpose violates Section 5 of Article 11 of the Kansas Constitution. The Legislature may amend a statute such that the monies derived from the capital outlay levy authorized by the statute may be expended on newly added purposes. The amendment must include a formula that designates the portions of the assessment that should be allocated to the various purposes authorized by the statute. The allocation is applicable only to the monies that are raised after enactment of the amendment. Those monies that are not derived from a property tax and that are transferred from the general fund to the capital outlay fund pursuant to statutory authority are not subject to the prohibition set forth in Article 11, Section 5. The Legislature, therefore, may provide for the return of the non-property tax monies back to the general fund.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] K.S.A. 72-8801(a). See also K.S.A. 72-8804.
[2] K.S.A. 72-8801(a).
[3] Id.
[4] K.S.A. 72-8803.
[5] K.S.A. 72-8804.
[6] Id.
[7] State v. Board of Comm'rs of Saline County, 128 Kan. 437, 439-40
(1929).
[8] Farmers Union C.C.E. v. Director of Revenue, 163 Kan. 266, 268
(1947); In re Martin, 62 Kan. 638, 640 (1901); State v. Matson,14 Kan. App. 2d 632, 640 (1990).
[9] State ex rel. Schneider v. City of Topeka, 227 Kan. 115, Syl. ¶ 3 (1980).
[10] See State v. Board of Thomas County Comm'rs, 122 Kan. 850 (1927);State v. Raub, 106 Kan. 196 (1920); State v. Board of Butler CountyComm'rs, 77 Kan. 527 (1908); State v. City of Emporia, 57 Kan. 710
(1897).
[11] State ex rel. Bd. of Crawford County Comm'rs v. Crawford Tp.,139 Kan. 553 (1934) (statute providing for charging back of funds of various taxing districts in county to reimburse county for prorated loss in county depository closed several years prior violates constitution);Board of Saline County Comm'rs, supra (transfer of monies in county road fund, county bridge fund, county general fund or bond sinking fund to state highway commission or use of such monies to pay costs of state highway construction in accordance with new statute violates constitution); Smith v. Haney, 73 Kan. 506 (1906) (statute that authorizes use of monies in county general fund for construction of courthouse allows unconstitutional use).
[12] City of Emporia, supra (transfer of funds held in county building fund to county general fund violates constitution).
[13] Board of Butler County Comm'rs, 77 Kan. at 536. See also Raub,106 Kan. at 203.
[14] Board of Butler County Comm'rs, 77 Kan. at 536.
[15] The statute conferred authority upon a board of county commissioners to build or repair any county building and pay the costs of such project through assessment of two mills and by using the remaining monies in the general fund. A separate statute authorized a levy for the purpose of providing monies for the general fund. The statute that authorized the general fund levy did not authorize expenditures for the purpose of constructing county buildings. Id.
[16] Board of Butler County Comm'rs, 77 Kan. at 536.
[17] K.S.A. 72-8807.
[18] K.S.A. 79-2958 authorizes transfers of monies remaining in a tax levy fund when "the amount in such fund is not presently and will not inthe future be required for the purpose for which it was levied due to the fact that all indebtedness and obligations of such fund have been fully paid and cancelled and such purpose has been discontinued or for any reason no longer exists. . . ." (Emphasis added.)
[19] State ex rel. Schneider, 227 Kan. at 122 (1980).
[20] See Meierhenry v. City of Huron, 354 N.W.2d 171, 181 (S.D. 1984) (the South Dakota Supreme Court noted that the South Dakota Constitution contains a provision equivalent to Section 5 of Article 11 of the Kansas Constitution and that the legislative act it was reviewing is similar to the legislative act reviewed by the Kansas Supreme Court in State exrel. Schneider).
[21] K.S.A. 72-6428, as amended by L. 2003, Ch. 116, § 10. Given the decision of the Kansas Supreme Court in Smith v. Haney, 73 Kan. 506
(1906), it is questionable whether monies transferred pursuant to this statute could legally be used for all the purposes set forth in K.S.A.72-8801 et seq.
[22] K.S.A. 72-6409(a), as amended by L. 2003, Ch. 158, § 7. The tax under K.S.A. 72-6431, as amended by L. 2003, Ch. 146, § 3, is an ad valorem property tax while the payment under K.S.A. 72-7105a is a payment between school districts to defray the costs of educating pupils who reside in territory transferred between the school districts.
[23] Footnote 8.